# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA f/u/b/o AMERICAN COMBUSTION INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD ACCIDENT AND INDEMNITY CO., <br><br> Defendant. | NO. 3:13-CV-0865 <br><br> (JUDGE CAPUTO) |

## MEMORANDUM

Presently before me is a Motion to Stay (Doc. 39) filed by Defendant Hartford Accident and Indemnity Company ("Hartford"). For the reasons that follow, Hartford's request for a stay will be denied.

## I. Background

Plaintiff American Combustion Industries, Inc. ("ACI") commenced this action against Hartford on April 8, 2013 for payment on a subcontract pursuant to the Miller Act, *see* 40 U.S.C. § 3131 *et seq.*, or, in the alternative, for quantum meruit. (*See* Doc. 1, *generally*). Specifically, in 2008, the United States Army Corps of Engineers (the "Corps") awarded John C. Grimberg Co., Inc. ("Grimberg") a contract for work related to the construction of a new central heating plant in Susquehanna, Pennsylvania. (*See id.* at ¶¶ 7-8). As the prime contractor on the project, Grimberg applied for and obtained a Payment Bond from Hartford in the sum of $19,959,706.00. (*See id.* at ¶¶ 9-10).

Grimberg ultimately solicited and selected a bid from ACI to subcontract work relating to the installation of new boilers and related equipment. (*See id.* at ¶ 11). Grimberg and ACI entered into a subcontract for that work in the amount of

$5,600,000.00 in April 2009. (*See id*. at ¶ 12).[1] During the course of ACI's work on the project, it alleges that a number of change orders were authorized, increasing the total price of the subcontract to $7,539,468.00. (*See id*. at ¶¶ 18-20).

ACI avers that, despite demand, payments totaling $261,775.50 remain due and owing from Grimberg regarding certain change orders on the project. (*See id*. at ¶¶ 26-29). These change orders included $156,738.23 for worked related to the Steam Bypass and $105,017.50 in other proposed change orders. (*See* Doc. 40, 10-11; Doc. 44, 9). As a result of Grimberg's nonpayment for this work, ACI commenced this action against Hartford pursuant to the obligations and responsibilities created by the Payment Bond. (*See* Doc. 1, ¶¶ 36-38).

On May 30, 2013, Hartford filed its Answer and Affirmative Defenses to ACI's Complaint. (*See* Doc. 8, *generally*). Thereafter, ACI and Hartford jointly requested and obtained a stay of the matter for a 120 day period. (*See* Doc. 23, *generally*). In requesting the stay, the parties indicated that Grimberg and ACI were "work[ing] together to pursue recovery from the Corps on the ACI [proposed change orders] that are pending with the Corps." (*See* Doc. 22, ¶ 5). At the joint request of the parties, the stay was extended multiple times. (*See* Docs. 25, 27, 29, 31, *generally*). Most recently, a 180 day stay was granted on August 23, 2016. (*See* Doc. 31, *generally*).

In a joint status report filed by the parties on March 30, 2017, the parties indicated that the claim submitted relating to a number of change orders completed by ACI had been denied by the Corps. (*See* Doc. 33, ¶ 6). The parties also stated that Grimberg filed a notice of appeal to the Armed Services Board of Contract Appeals ("ABSCA") on January 31, 2017. (*See id*. at ¶ 7). In view of that appeal, Hartford believes that the stay should be continued, but ACI takes the position that the action

---

[1] ACI and Hartford dispute whether the subcontract also includes Grimberg's "Standard Subcontract Terms and Conditions." (*See* Doc. 44, 7, 11; Doc. 45, 2-6; *see also* Doc. 1, ¶ 12). That issue need not be decided to dispose of the instant request for a stay for the reasons set forth in the text.

*sub judice* can proceed without a final resolution of the ASBCA matter. (*See id*. at ¶¶ 8-9).

As such, Hartford filed the instant motion to stay the action. (*See* Doc. 39, *generally*). Hartford contends that a continuation of the stay in this case is necessary to allow for completion of the disputes process. (*See* Doc. 40, 13-17). As set forth by Hartford, the only claim submitted in the disputes process to the Corps relates to the Steam Bypass change orders. (*See id*. at 10-11). Thus, the remaining $105,755.70 in change orders claimed by ACI were not presented to the Corps. (*See id*. at 11, 23). According to Hartford, the disputes process for the Steam Bypass change orders is mandatory under the subcontract, and because this process has not yet been completed, proceeding with this action is premature. (*See id*. at 15). As a result, Hartford argues that all relevant factors weigh in favor of staying ACI's Miller Act claim while ACI exhausts this disputes process. (*See id*. at 17-24).

ACI opposes any further stay of the instant litigation. (*See* Doc. 44, *generally*). ACI first claims that Hartford is unable to satisfy its burden justifying the grant of a stay. (*See id*. at 9-10). Second, ACI disputes that the subcontract includes the terms and conditions relating to the disputes process. (*See id*. at 11). Additionally, ACI argues that even if the subcontract includes the disputes process provisions cited by Hartford, a stay should still be denied. (*See id*. at 12-15).

Hartford in reply asserts that the disputes procedure is part of ACI's subcontract with Grimbell. (*See* Doc. 45, 2-6). Hartford further responds that the Steam Bypass claim is governed by the disputes process. (*See id*. at 7-9). Finally, Hartford maintains that ACI delayed the disputes process and a stay is therefore appropriate under the circumstances. (*See id*. at 11-14). Hartford's motion for a stay is fully briefed and ripe for disposition.

## II. Discussion

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see*

3

*United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). In exercising that discretion, a district court is instructed to "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). To that end, when determining whether to grant a stay, a district court should consider "(1) the length of the requested stay; (2) the hardship or inequity that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay would simplify issues and promote judicial economy." *Rajput v. Synchrony*, 221 F. Supp. 3d 607, 609-10 (M.D. Pa. 2016) (citing *Barnard v. Lackawanna Cnty.*, No. 15-2220, 2016 WL 362424, at *2 (M.D. Pa. Jan. 29, 2016)); *see also Structural Grp., Inc. v. Liberty Mut. Ins. Co.*, No. 07-1793, 2008 WL 6416843, at *5 (M.D. Pa. Oct. 16, 2008) (citing *Landis*, 299 U.S. at 256). The party requesting the stay "'bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Supinski v. United Parcel Serv., Inc.*, No. 06-793, 2012 WL 1622385, at *1 (M.D. Pa. May 9, 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)).

The request for a stay will be denied. For one, the stay sought by Hartford is for an indefinite duration, and stays in such circumstances are disfavored. *See, e.g., Kegerise v. Susquehanna Twp. Sch. Dist.*, No. 14-747, 2017 WL 5070244, at *3 (M.D. Pa. Nov. 3, 2017); *Clouser v. Golden Gate Nat'l Senior Care, LLC*, No. 15-33, 2016 WL 4254268, at *7 (W.D. Pa. Aug. 10, 2016); *accord Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983) ("We emphasize that *Landis* approved stays of moderate length, and not those of indefinite duration.").

Nor do I find the claimed hardship or inequity Hartford would face in going forward with litigation in this Court to weigh in favor of a stay. It is undisputed that payments for a significant sum of the change orders sought by ACI in this litigation

4

were not presented to the ASBCA. (*See* Doc. 40, 4).[2] Thus, this factor does not weigh in favor of a stay.

Third, granting Hartford's request for a stay would likely inflict injury upon ACI. As the claims at issue in this action relate to events that occurred primarily in 2010-2011, (*see* Doc. 43, Ex. 16 ("Contracting Officer's Decision"), 4-5), delaying this case may well prejudice ACI's ability to present its case. Moreover, as stated, ACI would suffer injury because there is nothing in the record indicating that the requested stay would be of limited duration. *See Kegerise*, 2017 WL 5070244, at *3.

As to the fourth factor, while there may be some benefit to judicial economy by allowing the disputes process to proceed first, this benefit is minimal given that a substantial portion of the change orders at issue in this case are not subject to that process. Regardless, though, even if that factor weights in favor of the relief requested by Hartford, the other factors do not support a stay of this action. *See Kegerise*, 2017 WL 5070244, at *4. And, it being that "a stay is an extraordinary measure requiring compelling reasons for its issuance," *Barnard*, 2016 WL 362424, at *3 (citation omitted), and finding none here, a stay will not issue.

Lastly, the United States District Court for the Eastern District of Virginia recently addressed whether a subcontractor "must await the completion of the dispute resolution process provided for in the Subcontract before the Subcontractor can show an amount due under the Miller Act." *See United States on Behalf of Kitchens to Go v. John C. Grimberg Co.*, No. 16-991, 2017 WL 4698217, at *7 (E.D. Va. Oct. 19, 2017). Like the matter *sub judice*, Grimberg was the prime contractor on a government project and Hartford was the surety. *See id.* at *1-2. Additionally, the "Standard Subcontract Terms and Conditions" at issue in *Kitchens to Go* appear

---

[2] Hartford suggests that the change orders other than those presented in the disputes process related to the Steam Bypass lack merit. (*See* Doc. 45, 12). Whether Hartford is correct, of course, is not determined here in the context of resolving a motion for stay.

identical to those which Hartford claims are part of ACI's subcontract in this litigation. *See* Complaint, *United States on Behalf of Kitchens to Go v. John C. Grimberg Co.*, No. 16-991, (E.D. Va. Aug. 2, 2016), ECF No. 1, Ex. A thereto. And, Hartford there, as it does here, argued that "the case should be stayed pending the outcome of the ongoing dispute resolution proceedings between the Prime Contractor and the Government Owner." *Kitchens to Go*, 2017 WL 4698217, at *7.

Considering much of the same authority and arguments that Hartford presents in this action, *see* Opposition to Motion for Partial Summary Judgment, *United States on Behalf of Kitchens to Go v. John C. Grimberg Co.*, No. 16-991, (E.D. Va. July 7, 2017), ECF No. 33, 17-18, the *Kitchens to Go* court concluded that the "Subcontractor need not await the completion of the dispute resolution proceedings between the Government and the Prime Contractor before the Subcontractor can show an amount due under the Miller Act, and accordingly, it would be inappropriate to enter another stay in this case." *Kitchens to Go*, 2017 WL 4698217, at *9. In reaching that conclusion, the district court explained that Hartford could not rely on the disputes process provision in the subcontract and that other courts addressing similar contractual provisions had declined to stay Miller Act cases. *See id*. at *7 (citations omitted). Further, the district court found the authority cited by Hartford inapposite because "those cases all involved subcontract provisions in which the subcontractor agreed to stay any Miller Act claims pending the outcome of the prime contractor's dispute resolution process," which was unlike the subcontract at issue in that case. *Id*. at *8 (citations omitted). Finally, the *Kitchens to Go* court noted that Hartford's citation to the legislative history of the Miller Act was unpersuasive because, assuming consideration of such was appropriate, it

> simply stands for the proposition that the Miller Act was not intended to disrupt the dispute resolution procedures between a subcontractor and a prime contractor provided for in a subcontract. By contrast, as described above, the dispute resolution procedures at issue here are between the Prime Contractor and the Government Owner, not the Subcontractor and the Prime Contractor. As such, this

> legislative history does not the diminish the force of the conclusion that the Subcontractor's right to bring a Miller Act claim on a payment bond is not contingent on the dispute resolution proceedings between the Prime Contractor and the Government Owner.

*Id*.

*Kitchens to Go* is well-reasoned and addresses a number of arguments that are the same as those advanced in this case. Accordingly, even if the "Standard Subcontract Terms and Conditions" are part of the ACI-Grimberg subcontract, *Kitchens to Go* provides strong persuasive support counseling against the entry of a stay. Thus, for the reasons set forth in *Kitchens to Go* as well as those previously discussed in detail here, an indefinite stay of this action is not appropriate.

### III. Conclusion

For the above stated reasons, Hartford's motion to stay will be denied.

An appropriate order follows.

December 1, 2017　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　United States District Judge